UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

EMILY CAMPBELL and LARRY      )
CAMPBELL, Individually and as husband and   )
wife,      )
        Plaintiffs,      )
     )
     vs.      )      1:07-cv-1428-TAB-LJM
     )
FEDERAL HOME LOAN MORTGAGE      )
CORPORATION, TERESA MUMFORD,      )
EAGLE REAL ESTATE, and PROPERTY      )
HOUSE GMAC,      )
        Defendants.      )

**ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

I.     **Introduction.**

Plaintiff Emily Campbell fell down a flight of stairs at a house she was viewing for

potential purchase.  Emily Campbell and her husband Larry sued the owner of the home, Federal

Home Loan Mortgage Corporation ("FHLMC"); the real estate broker, Eagle Real Estate; the

real estate agent Plaintiffs called upon to see the home, Teresa Mumford; and the real estate

agency for which Mumford works, Property House, GMAC ("Property House").  Defendants

FHLMC and Eagle Real Estate filed motions for summary judgment arguing that the home had

no latent defect for which they were required to warn Emily Campbell, and therefore they could

not have been negligent.  [Docket Nos. 37, 38, 43, 44.]  Defendants Property House and

Mumford filed for summary judgment making the same argument and further asserting that even

if a defect existed they would have had no knowledge of it and no reason to have knowledge of

it, and therefore they were not negligent.  [Docket Nos. 50, 51.]  Additionally, Property House

and Mumford request attorney's fees under Indiana Code § Section 34-52-1-1(b) asserting that

the claims against them have no merit.  For the reasons set forth below, FHLMC and Eagle Real

Estate's motions for summary judgment [Docket Nos. 37, 43] are granted.  Mumford and

Property House's motion for summary judgment [Docket No. 50] is also granted, but their

request for fees is denied.

## II.    Background.

The material facts for purposes of these summary judgment motions are straightforward

and undisputed.  Emily Campbell contacted realtor Mumford of Property House to show her a

house in Delaware County.  The house was owned by FHLMC and was listed with Eagle Real

Estate.  On the evening of November 20, 2005, Mumford, who had never seen the home, met

Emily and Larry Campbell, and several of their family members, at the house.  After letting the

Campbells into the home, Mumford returned to her car to retrieve paperwork.

As Emily began looking around the home, she found a narrow door near the kitchen,

which she thought was a pantry.  She opened the door and it was dark inside, so she felt along

the wall for a light switch.  She did not find one, so she leaned forward and reached out thinking

she would find a pull string.  As she did so, she lost her balance and fell down an unlit stairway.

There was a light switch on the wall at the top of the stairs but it was not functioning.  The

functioning light for the basement was located near a different entrance to the basement—the

original entrance.  Larry Campbell testified that from the top of the stairs he could not see the

first step of the stairway without the illumination provided by his cigarette lighter.

2

III.    **Discussion.**

To survive a motion for summary judgment, "the nonmoving party must 'come forward with specific facts showing that there is a genuine issue for trial.'" *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 2008 U.S. App. LEXIS 26825, at * 8 (7th Cir. 2008) (quoting *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 56(c). All reasonable inferences are drawn in favor of the nonmoving party. *Hansen*, 2008 U.S. App. LEXIS 26825, at * 8.

Plaintiffs' negligence and loss of consortium claims are state law claims, and therefore this Court must apply Indiana law to them as declared by the Indiana Supreme Court. *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001).  If the Indiana Supreme Court has not decided an issue, "the rulings of the state intermediate appellate courts must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently." *Id.*; *see also Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007); *Brown v. Argosy Gaming Co., L.P.*, 384 F.3d 413, 416-17 (7th Cir. 2004).

Plaintiffs' negligence claim has three elements under Indiana law: "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach." *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004).  The duty owed by a landowner to persons on the premises depends on whether the person is a trespasser, a licensee, or an invitee. *Kopczynski v. Barger*, 887 N.E.2d 928, 931 (Ind. 2008).  "[T]he existence of a duty is ordinarily a question of law for the court to decide, but it may turn on factual issues that must be resolved by the trier of fact." *Id.*  Plaintiffs' briefs in response to Defendants' motions for summary judgment do not include any statements of material facts in

3

dispute, [*see* Docket Nos. 54, 59; S.D.Ind.L.R. 56.1(b)], and the Court assumes that the parties

are not in disagreement as to the facts for purposes of these motions.  Rather, the parties disagree

as to what inferences should be drawn from the facts.

**A.      Defendant FHLMC.**

In this case, Plaintiffs were business visitors of the landowner, FHLMC, and therefore

Plaintiffs were invitees.  *See Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991) ("A business

visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly

connected with business dealings with the possessor of the land.") (quoting Restatement

(Second) of Torts § 332) (1965)).  Thus, FHLMC owed Plaintiffs a duty to exercise reasonable

care for their protection while they were on the premises.  *Id*.  More specifically, Indiana has

adopted the definition of this duty as described by Restatement (Second) of Torts § 343 (1965):

> A possessor of land is subject to liability for physical harm caused to his invitees
> by a condition on the land if, but only if, he
>
>> (a) knows or by the exercise of reasonable care would discover the
>> condition, and should realize that it involves an unreasonable risk of harm
>> to such invitees, and
>> (b) should expect that they will not discover or realize the danger, or will
>> fail to protect themselves against it, and
>> (c) fails to exercise reasonable care to protect them against the danger.

*Burrell,* 569 N.E.2d at 639-40 (quoting Restatement (Second) Torts § 343 (1965)); *see also*

*Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 973 n.5 (Ind. 1999).

FHLMC argues that there was no latent defect and therefore no duty to disclose or no

breach of duty to disclose.  It argues that there is no evidence that the staircase Plaintiff fell

down was any more dangerous than any other staircase, but rather "Plaintiff fell down the stairs

because she failed to activate the lights prior to entering the staircase."  [Docket No. 38 at 6.]  It

contends that "the only danger that could have existed is the *known* danger of entering a dark

4

area that one is unfamiliar with" and that "[t]here was simply no reason for [FHLMC] to expect that someone would simply lean into or enter a 'pitch black' area behind a door in a home they are unfamiliar with."  [*Id*. at 6, 7.]

Conversely, Plaintiffs cite two Indiana cases in support of their proposition that the issue of whether Defendants breached their duty of care should be left for a jury.  First, Plaintiffs cite *Silvestro v. Walz*, 222 Ind. 163, 51 N.E.2d 629 (Ind. 1943), where a man fell down a stairway at an automobile repair shop.  The man was looking for a restroom and assumed it would be past an office door through what "looked like a passage-way," but instead it was a stairway.  *Id*. at 169.  There was no light and no way to make light at the top step.  *Id*. at 168.  Furthermore, "there was no door nor gate at the stair entrance and no signs indicating that it was private or dangerous."  *Id*.  The Indiana Supreme Court determined the evidence was sufficient to sustain a $1,400 verdict in favor of the plaintiff.  *Id*. at 174.  Plaintiffs argue that the facts in *Silvestro* are similar to those in this case, and that FHLMC breached its duty of reasonable care to Emily Campbell by its failure to take precautions on behalf of Plaintiffs.

Plaintiffs also liken the facts of their case to *Holtam v. Sachs*, 136 Ind. App. 231, 193 N.E.2d 370 (1963), where the Indiana Court of Appeals affirmed a jury verdict in favor of the plaintiff, who sustained injuries when she fell down a stairway while inspecting the premises of a residence for rent.  During the inspection, the plaintiff opened a door with a "small nail bent over a hasp which, in some measure, made the said closed door secure."  *Id*. at 234.  This door led to a large commercial room, which she inspected, and on the other side of the room was an opening that led to a stairway.  *Id*.  She was attempting to locate a stairway up, but this stairway led to the basement, and she fell down it.  The Court of Appeals determined that "anyone seeking a place

5

to rent as a residence would have sufficient interest and curiosity, on inspection thereof, to learn all he could regarding the facilities available and the adaptability thereof to his individual wants and requirements."  *Id*. at 238.  Plaintiffs argue that like in *Holtman*, FHLMC knew the Plaintiffs were prospective purchasers and would want to enter and inspect the premises.  [Docket No. 54 at 8.]

FHLMC distinguishes *Silvestro* and *Holtam* by pointing out that unlike the home the Campbells viewed, in both of those cases there was no door right before the stairway to guard the plaintiffs from falling down.  [Docket No. 56 at 1, 4.]  For example, in *Holtman*, the Court of Appeals upheld the trial court's denial of the defendant's motion to withdraw from the jury paragraph 5 of the complaint, where the defendant had argued there was insufficient evidence to sustain these allegations.  *Holtman*, 193 N.E.2d at 376.  Paragraph No. 5 stated: "The defendant negligently failed to place a guard or door across the opening in said first floor where said stairway passed from said first floor to said basement; that said opening was unprotected, unguarded, and unlighted . . ."  *Id*.

FHLMC had a duty to Plaintiffs to exercise reasonable care to protect them from conditions on the land that it knew or should have realized was an unreasonable risk of harm that Plaintiffs would not discover or would fail to protect themselves against.  Restatement (Second) of Torts § 343 (1965).  The issue is whether a reasonable jury could conclude that FHLMC breached its duty.  "[T]he determination of whether a breach of duty occurred is a factual question requiring an evaluation of the landowner's conduct with respect to the requisite standard of care."  *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990).

While *Silvestro* and *Holtman* have some similarities to the case at bar, viewing these

6

cases in light of Restatement (Second) of Torts § 343 (1965) demonstrates their significant difference: unlike in the case at bar, the stairways in both *Silvestro* and *Holtman* were unguarded.[1]  This distinction is important because an unguarded stairway is more clearly a risk of harm to invitees than is a guarded stairway.  While all stairways are inherently dangerous to a certain extent, a stairway guarded by a closed door is not an area that someone could stumble upon without some thought.

However, Plaintiffs argue that the stairway guarded by the door was an unreasonable risk.  They contend that FHLMC could have taken reasonable precautions to protect Plaintiffs from the stairway such as "locking the door that led to the basement stairway to prevent entry, posting a sign warning that the door led to the basement, and/or repairing the light source near the basement entranceway through which Emily Campbell fell."  [Docket No. 54 at 9.]

Plaintiffs' reference to this non-functioning light switch warrants discussion.  Plaintiffs' summary judgment responses place great emphasis on this fact.  Indeed, Plaintiffs' briefs state in bold letters "the light switch did not work."  [Docket No. 54 at 3; Docket No. 59 at 3.]  Plaintiffs also point out that when Larry Campbell returned to the property the next day he "discovered that the light fixture on the basement ceiling hear the entrance Mrs. Campbell had fallen through was missing," and that "there were wires sticking out where the light fixture was once located." [*Id.*]

---

[1] While *Silvestro* and *Holtman* were both decided prior to the adoption of § 343 (1965), this adoption was more a reflection of the law, not a change in it.  *See Hammond v. Allegretti*, 262 Ind. 82, 84-85, 311 N.E.2d 821, 823-24 (Ind. 1974) (noting, in this first case citing § 343, that the English rule "has become a cornerstone of occupier's liability law in all American common law jurisdictions" and that § 343 "has incorporated the English rule").  Thus, this comparison, while somewhat of an anachronism, is nonetheless relevant.

Under different facts a malfunctioning light switch, a missing light fixture, and exposed wires could prove significant, and easily support a denial of summary judgment.  But these conditions must be viewed in terms of the actual facts in this case.  The undisputed facts, as testified to by Emily Campbell, are:

A      And we went into the kitchen, and there was a door.

Q      All right.  Did you open the door?

A      Yes, sir, I did.

Q      All right.  And what did you see, you said - -

A      Pitch black.

Q      So you didn't know what was in that darkness?

A      No, sir.

Q      All right.  What did you do next?

A      I reached with my right hand on the wall to - - for a light switch, didn't feel one.  And then I leaned forward for a pull string or something - - you know, thinking, most generally. There's a pull string if there's not a light switch.  And when I did, I leaned forward and lost my balance.

Q      What happened next?

A      I found myself at the bottom of the stairs.

[Docket No. 43, Ex. 1.]

Likewise, Larry Campbell testified that he did not discover the non-functioning light switch until after his wife's fall.  [Docket No. 50, Ex. 5, 5:21-6:18.]  Thus, it is undisputed that the Plaintiffs were unaware that the light switch was not operable at the time of Emily Campbell's fall, and therefore this fact played no role in Plaintiffs' injuries.  More specifically, Plaintiffs contention that repairing the light would somehow have prevented Emily's fall is not

supported by the undisputed evidence in this case.

This leads to Plaintiffs' remaining argument–that FHLMC should have locked the door that led to the basement to prevent entry or posted a warning sign. This Court does not believe that Indiana law requires such precautions here. The previously referenced cases of *Silvestro* and *Holtman*–both of which involved unguarded stairways–cannot be stretched to impose such a requirement. To hold otherwise would require homeowners to post warning signs and/or lock doors without regard to the obviousness of the potential danger. The undisputed facts are that Emily Campbell opened a closed door and was confronted with pitch black darkness, without any knowledge of what that darkness contained. She leaned into that darkness, lost her balance, and fell. Plaintiffs' attempt to shift the blame for this incident is misplaced. As noted in the summary judgment briefing, Emily Campbell did not trip or slip on anything prior to her fall. [Docket No. 44 at 3.]. There were no foreign objects on the floor that caused her fall. [*Id.*] The bannister was not loose; the steps were not broken or even mis-shapen. No reasonable jury could find against FHLMC based on these facts.

Because Plaintiffs have failed to "come forward with specific facts showing that there is a genuine issue for trial" as to their claim against FHLMC, *Hansen,* 2008 U.S. App. LEXIS 26825, at * 8, FHLMC's motion for summary judgment [Docket No. 37] is granted.

### B.      Defendants Eagle Real Estate, Teresa Mumford, and Property House

The relationship between Plaintiffs and the remaining Defendants is different than as between Plaintiffs and FHLMC because the duty owed by real estate brokers is different than for landowners:

> [R]eal estate agents who do not control a premises [have no] duty to inspect properties for sale and to warn prospective buyers of dangerous conditions they

9

discover.  However, we hold a broker does have a duty to warn a prospective buyer
of a latent defect of which the broker is aware.

*Masick v. McColly Realtors, Inc.*, 858 N.E.2d 682, 687 (Ind. App. 2006).  Defendants Eagle Real

Estate, Teresa Mumford, and Property House argue that they had no duty to warn Emily

Campbell because there was no latent defect.  [Docket No. 44 at 5-6; Docket No. 51 at 8-9.]

This articulation of the issue is a bit confusing.  Perhaps a clearer way of describing the issue is

to ascertain what general duty these Defendants owed, and then determine whether a reasonable

jury could conclude that the Defendants breached this duty based on the undisputed facts of the

case. *Cf. Rhodes v. Wright*, 805 N.E.2d 382, 388 (Ind. 2004) (pointing out that whether the

plaintiff had superior knowledge of a situation did not relieve the defendant of a duty to warn,

but rather it went to the question of whether the defendant breached its duty).

As the Court concluded above, the stairway did not pose an unreasonable risk of harm to

Plaintiffs.  For the same reasons, it was not a latent defect.  As Eagle Real Estate points out,

"Emily Campbell fell because she lost her balance, not because of any defect." [Docket No. 44

at 7.]  Therefore, Defendants Eagle Real Estate, Mumford, and Property House did not breach

their duty and are entitled to judgment as a matter of law.

Mumford and Property House also seek relief under Ind. Code § 34-51-1-1(b), which

provides attorney's fees in civil actions if the court finds that a claim or defense is frivolous,

unreasonable, or groundless.  While Plaintiffs probably should have dismissed these Defendants

upon receiving their motion for summary judgment, the standard of frivolousness,

unreasonableness, or groundlessness necessary for awarding fees is high.  The fact that

Plaintiffs' arguments against these Defendants failed, or even were not particularly persuasive,

does not mean that an award of fees is appropriate.

Accordingly, the Court grants Defendants Eagle Real Estate's motion for summary judgment [Docket No. 43]. The Court likewise grants Mumford and Property House's motion for summary judgment [Docket No. 50], but denies their request for attorney's fees under Ind. Code § 34-51-1-1(b).

## IV.    Conclusion.

For the foregoing reasons, the Court determines that Defendants Federal Home Loan Mortgage Corporation and Eagle Real Estate have established that the undisputed facts entitle them to judgment as a matter of law, and their summary judgment motions [Docket Nos. 37, 43] are granted. Defendants Teresa Mumford and Property House have likewise established that the undisputed facts entitle them to judgment as a matter of law, and their summary judgment motion [Docket No. 50] is also granted. However, they are not entitled to attorney's fees.

Dated: 02/13/2009

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

11

Copies to:

James L. Culp
KIGHTLINGER & GRAY
jculp@k-glaw.com

R. T. Green
BLACKBURN & GREEN
rtgreen@blackburn-green.com

David Jonathan Karnes
DENNIS WENGER & ABRELL PC
karnesd@dwapc.com

Nicholas Ward Levi
KIGHTLINGER & GRAY
nlevi@k-glaw.com

Marcum Jarvis Lloyd
SMITH FISHER MAAS & HOWARD P.C.
mlloyd@smithfisher.com

James William Roehrdanz
KIGHTLINGER & GRAY
jroehrdanz@k-glaw.com